UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michael Garnick,

    Plaintiff,

v.                                                Case No. 17-12026

Interstate Batteries, Inc.,              Sean F. Cox
                                                      United States District Court Judge

    Defendant.
_____/

**OPINION & ORDER
GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Plaintiff filed this suit against his former employer, alleging that Defendant terminated his employment due to his military obligations with the National Guard, in violation of state and federal statutes. The matter is currently before the Court on Defendant's Motion to Dismiss and Compel Arbitration. The parties have fully briefed the issues and the Court ordered supplemental briefing by the parties, which has been completed. The Court concludes that oral argument is not necessary and ORDERS that the motion will be decided without oral argument. As explained below, the Court shall GRANT the motion seeking to compel arbitration because: 1) there is a valid agreement to arbitrate and this employment dispute is within its broad scope; and 2) Plaintiff knowingly and voluntarily waived his right to a jury trial under federal law.

**BACKGROUND**

**A.    Procedural Background**

Plaintiff Michael Garnick filed this action against his former employer, Defendant Interstate Batteries, Inc., on June 22, 2017. Plaintiff alleges that he was an employee of

1

Defendant while also serving as a "member of the Uniformed Services, specifically the Army National Guard." (Compl. at 3). Plaintiff alleges that Defendant wrongfully terminated his employment due to his military obligations, in violation of federal and state statutes. Plaintiff asserts the following claims: "Count I – Denial of Reemployment, Retention in Employment, or Any Benefit of Employment in Violation of 38 U.S.C. § 4311(a)"; "Count II – Uniformed Services Discrimination in Violation of 38 U.S.C. § 4311(b);" "Count III – Denial of Reemployment Rights of Persons Who Serve in the Uniformed Services in Violation of 38 U.S.C. § 4312;" and "Count IV – Violations of the Military Leave; Reemployment Protection Act 133 of 1955 MCL 32.271 et seq."

The parties stipulated that Defendant could have until August 25, 2017 to respond to the complaint. (D.E. No. 7).

This Court's practice guidelines pertaining to motion practice provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

2

https://www.mied.uscourts.gov.

On August 25, 2017, Defendant filed a "Motion to Dismiss and Compel Arbitration, based upon an alleged agreement to arbitrate. (D.E. No. 8).

After that motion had been briefed by the parties, this Court issued an order for supplemental briefing, wherein the Court explained and ordered as follows:

> As to the validity challenge, the applicable standard mirrors the summary judgment standard. *See Great Earth Companies v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). But neither Defendant nor Plaintiff have complied with this Court's practice guidelines as to summary judgment motions. The Court hereby **ORDERS** that:
>
> 1) No later than **January 31, 2018**, Defendant shall file a supplemental brief of no more than **12 pages** that focuses on the applicable summary judgment standard as to this issue, and addresses any choice-of-law issues if the parties do not agree on the applicable state law that applies to the validity dispute. *Defendant shall also file a separate Statement of Material Facts Not In Dispute, as provided in this Court's practice guidelines*;
>
> 2) No later than **February 21, 2018,** Plaintiff shall file a supplemental response brief of no more than **12 pages** that focuses on the applicable summary judgment standard as to this issue, and addresses and addresses any choice-of-law issues if the parties do not agree on the applicable state law that applies to the validity dispute. *Plaintiff shall also file a separate Counter-Statement of Disputed Facts, as provided in this Court's practice guidelines*; and
>
> 3) No later than **February 28, 2018**, Defendant may file a supplemental reply brief of no more than **4 pages**.
>
> **IT IS SO ORDERED**.

(D.E. No. 15) (bolding in original; italics added for emphasis).

In compliance with the Court's Order, on January 31, 2018, Defendant filed: 1) a supplemental brief (D.E. No. 18); and 2) a separate statement of material facts not in dispute, in compliance with this Court's practice guidelines, along with supporting exhibits. (D.E. No. 17).

On February 21, 2018, Plaintiff filed a supplemental brief. (D.E. No. 19). Plaintiff did not, however, file a counter-statement of disputed facts, as ordered by the Court.

**B.    Relevant Facts**

Plaintiff initially sought a position with Defendant in Taylor, Michigan but he was not selected for that job. (D.E. No. 21-2 at Pg ID 545). Based on his qualifications, however, he was contacted about a job opening in Dallas, Texas and Plaintiff expressed interest in that position. (*Id.*). On February 26, 2015, Defendant flew Plaintiff to Texas to interview for the position, tour the area, and make sure he was interested in moving to Texas. (*Id.*)

Plaintiff formally applied for employment with Defendant on March 12, 2015, by submitting an employment application on the company's online electronic application system. (D.E. No. 17-2 at ¶ 7; D.E. 17-3; D.E. No. 8-4). Plaintiff's application of employment contained the following:

> I further understand that Interstate Batteries has adopted a **Dispute resolution Policy**, Information Security and Confidentiality and other policies as contained in the Team Playbook, **which I submit to, if hired**, as an Interstate Batteries Team Member.

(D.E. No. 17-3 at Pg ID 272) (bolding added for emphasis). Plaintiff acknowledged and agreed to that provision on March 12, 2015, at 2:26 p.m., with an electronic signature, when he checked an online box on his application of employment for submission to Interstate. (D.E. No. 17-3 at 273).

At the time that he applied to Defendant for employment, Plaintiff indicated that he had graduated high school. Plaintiff further indicated that, although he had not yet received a degree, he had attended Eastern Michigan University for five years, studying communications. Plaintiff also identified that he had the following special skills and qualifications: "P&L, Microsoft office,

4

Team Building, Lean, 6Sigma, Logistics Management." (D.E. No. 17-3 at Pg ID 269).

Plaintiff's application indicated that Plaintiff had worked for Ferguson Enterprises from June of 2014 until February of 2015 as the "Shipping Manager," where he managed outbound operations for a hub facility and earned a salary of $53,000.00 per year. Plaintiff further indicated that, from April of 2007 to February of 2015, he was a "Section Chief" with the Michigan Army National Guard, where he "directed firing battery training and operations." (*Id*. at Pg ID 270; *see also* D.E. No. 17-4).

On or about March 11, 2015, Defendant offered Plaintiff the position of Assistant Market General Manager for Defendant's Dallas, Texas warehouse, starting on March 30, 2015, for an annual salary of $60,000, a company vehicle, and a relocation stipend. (D.E. No. 17-5).

Plaintiff accepted the offer of employment on March 11, 2015. (*Id*.). On March 30, 2015, Plaintiff reported to work in Dallas, Texas.

At that time, Robert Addis was the Market General Manager at Defendant's warehouse in Dallas, Texas. (*Id*.). (D.E. No. 17-6). Defendant's Dallas warehouse did not have a Human Resources Representative onsite. Thus, Addis's job responsibilities as Market General Manager included managing the onboarding process of new hires at the warehouse in Dallas. (*Id*.). Addis's Declaration further states:

> 5. As a general practice, and following instructions from Interstate's Human Resources Department, I printed copies of required new employee documents for each and every new hire at Interstate's warehouse in Dallas, and compiled the documents into packets for distribution to new hires.
>
> 6. The standard documents that I compiled in the new hire packet included the Interstate Batteries Team Playbook *a full copy of Interstate's Dispute Resolution Program ("DRP")* and the Team Member Policy and Procedure Receipt ("Acknowledgment Form") to review, sign, and return

5

>     to me, along with other required forms.
>
> 7.  When new employees returned the Acknowledgment Forms to me, I also signed the Acknowledgment form to witness and confirm the employee's acknowledgment of his or her receipt of required company documentation, including the DRP.
>
> 8.  Completion of the forms was followed by online training for new hires which also typically took several hours. I did not rush employees to complete their forms. I did not encourage any new hire to break a record for fastest signing time of onboarding documents,[1] nor did I maintain any record of the shortest time it took a new hire to complete their forms.
>
> . . . .
>
> 12. As a new assistant manager, Mr. Garnick received a user name and password to access Interstate's internal intranet site and was provided an office and dedicated computer.
>
> 13. The DRP is maintained in the ordinary course of business on the Company's internal intranet Web site at all times and is easily accessible by clicking on the Resources tab and then the Policies tab (see attached screen shots – Exhibit 3).
>
> 14. On March 30, 2015, Michael Garnick started working at Interstate and was given a new hire packet. Mr. Garnick did not ask me that day for more time to review any of the new hire documentation. He never said anything to me about missing the DRP from his packet nor did he ask for a copy.
>
> 15. Mr. Garnick never asked me any questions about the DRP at any point during employment.

(D.E. No. 17-6) (italics added for emphasis).

On March 30, 2015, Plaintiff signed a "Team Member Policy and Procedure Receipt,"

(D.E. No. 17-7), *acknowledging receipt of Defendant's policies and procedures*, including its

---

[1] In responding to Defendant's motion, Plaintiff response brief asserted that an unidentified "Human Resources representative" encouraged him to sign new hire documents as quickly as possible. (*See* D.E. No. 10 at Pg ID 151). Plaintiff did not, however, despite this Court's express order to do so, file a Counter-Statement of Disputed Facts to challenge the evidence presented by Defendant in support of its motion.

"Dispute Resolution Program." That form signed by Plaintiff further states, in pertinent part:

> I agree to fully comply with all of the provisions of each policy and procedure. I understand that violation of any policy or procedure set forth in these handouts, or updates which follow, may be grounds for disciplinary action and/or dismissal. *It is, therefore, my responsibility to read the contents in their entirety and to abide by the policies and procedures therein.*
>
> *I also agree that as an Interstate Team Member, I am subject to and accept all provisions of the Dispute Resolution Program.*

(D.E. No. 17-7) (italics added for emphasis). Mr. Addis witnessed Plaintiff's signature of that form. (*Id.*).

It is undisputed that Defendant's "Dispute Resolution Program" policy contains the following provision:

> The Dispute Resolution Program is separate and distinct from the policies contained in the Playbook and the SOLE AND EXCLUSIVE means by which both you and Interstate may resolve disputes arising from your prospective or actual employment with the Company. The Dispute Resolution Program applies to any and all employment related disputes, except for instances where Interstate is forced to seek court ordered injunctive relief to prevent actions of an employee that are in violation of contract or otherwise imminently harmful to Interstate. Applying for or continuing employment with Interstate constitutes your acceptance of the Dispute Resolution Program as the only method you will use to resolve a conflict with the Company.

(D.E. No. 17-8 at Pg ID 289-90). Defendant's Dispute Resolution Program "involves mediation and biding arbitration held by the American Arbitration Association (AAA), a neutral and objective third party." (*Id.* at Pg ID 289). Defendant's Dispute Resolution Program policy explains that "[a]rbitration is a process in which a dispute is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator makes this decision after both sides present their arguments at the arbitration hearing. There is no jury." (*Id.* at Pg ID 292).

Defendant's Dispute Resolution Program policy is maintained in the ordinary course of

business on the company's internal intranet web site at all times and is accessible by clicking on the Resources tab and then the Policies tab. (D.E. No. 17-6 at Pg ID 283).

In addition, Defendant's Team Playbook advises that the "Dispute Resolution Program is a separate and distinct document pertaining to your employment with the Company." (D.E. No. 17-9 at Pg ID 296). It further states:

> **Internal Dispute Resolution Program/Employment Arbitration**
> If you have an issue that is not resolved through informal communication, the Company has a more formal internal dispute resolution process which is detailed in a separate and distinct document. The Company's Dispute Resolution Program is used to bring final resolution to employment related issues, including legal claims. For additional information, please see the Dispute Resolution Program or contact your Talent Group Business Partner.

(*Id*. at Pg ID 297) (bolding, underlining and blue hyper-link in original).

On or about January 17, 2016, Plaintiff was promoted to Market General Manager I and transferred to Defendant's facility in Taylor, Michigan. (D.E. No. 17-2 at Pg ID 266).

On June 22, 2017, Plaintiff filed this action against Defendant in federal court.

## ANALYSIS

Defendant's motion asks this Court to compel Plaintiff to arbitrate the claims he has asserted against it in this action. This motion involves both a validity challenge to the arbitration agreement and a challenge by Plaintiff as to whether he knowingly and voluntarily waived his right to a jury trial under federal law.

### I. Validity Challenge

When a motion to compel arbitration is filed, the court must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the dispute at issue falls within the scope of that agreement. *Mazera v. Varsity Ford Mgmt.*

8

*Svs, LLC,* 565 F.3d 997, 1001 (6th Cir. 2009). "It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

In determining whether the parties have made a valid arbitration agreement, state law governs generally applicable contract defenses, such as fraud, duress, unconscionability, lack of mutual assent, etc.. *Great Earth*, *supra*, at 889. In other words, because arbitration agreements are fundamentally contracts, the court reviews the enforceability of an arbitration agreement according to the applicable state law of contract formation. *Hergenreder v. Bickford Senior Living Group, LLC,* 656 F.3d 411, 416 (6th Cir. 2011).

Here, following the supplemental briefing ordered by this Court, the parties now agree that Texas law governs. (*See* D.E. Nos. 18 at Pg ID 319; D.E. No. 19 at Pg ID 479 & 481).

An agreement's validity is "in issue" when "the party opposing arbitration ... show[s] a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth*, 288 F.3d at 889. Thus, the court views "all facts and inferences drawn therefrom in the light most favorable" to the party opposing arbitration and "determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.* Thus, where, as here, a party opposing a motion to compel arbitration argues there is no agreement to arbitrate and asserts some state-law contractual argument as to why no agreement exists, the Court applies a summary judgment-type standard.

Here, Plaintiff challenges the arbitrability of his claims on validity grounds, asserting that

9

there is no enforceable agreement to arbitrate.

Under Texas law, the elements of an enforceable contract are: 1) offer; 2) acceptance; 3) mutual assent or a meeting of the minds; 4) consent to the terms; 5) execution and delivery of the contract with an intent it become mutual and binding; and 6) consideration. *Wilmot v. Boutknight*, 466 S.W.3d 219, 229 (Tex. Ct. App. 2015); *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. Ct. App. 2013).

In challenging the arbitration agreement here, Plaintiff claims that there was no mutual assent or meeting of the minds and no consideration. (D.E. No. 19 at Pg ID 470 & 471).

### A. Mutual Assent Or Meeting Of The Minds

Plaintiff first asserts that the Court should find there was no meeting of the minds here, based on *Fyyan v. McNutt*, 266 Mich. 406 (1934) and *Monroe Bank & Tr. v. Jessco Homes of Ohio, LLC*, 652 F. Supp.2d 834, 838 (E.D. Mich. 2009), because Defendant engaged in "high pressure tactics," such as moving him from Texas to Michigan and promising him a company vehicle, and not providing him an opportunity to take his onboarding documents home to review.

This argument fails. First, the cases that Plaintiff relies on do not involve Texas law, nor do they involve analogous facts or circumstances. Second, in respond to Defendant's properly-supported statement of material facts, Plaintiff chose not to respond. Plaintiff has not offered sufficient admissible evidence to support his assertions of high pressure tactics that would create an issue of fact as to whether there was mutual assent.

### B. Mutuality Of Obligation Or Consideration

Next, Plaintiff claims there is no valid agreement to arbitrate because there was no mutuality of obligation or consideration. Plaintiff asserts that a contract is unenforceable if one

10

party is bound to perform but the other is not. (D.E. No. 19 at Pg ID 481). Plaintiff claims that, although Plaintiff agreed to waive his rights to jury trial and arbitrate disputes, Defendant did not commit or obligate itself to do anything. (D.E. No. 19 at 482). Thus, Plaintiff argues that there is no enforceable agreement to arbitrate for lack of mutual obligation.

The Court rejects Plaintiff's argument. As Defendant explains in its brief, there is no lack of mutuality of obligation here under the case law provided by the Sixth Circuit:

> Under the plain language of the DRP, Interstate has the same duty to arbitrate as Plaintiff. (Ex. C-3 of Dkt. 8-4 p.2; Dkt. 11 p.7). As discussed in Interstate's Reply Brief (Dkt. 11), the Sixth Circuit has held that "reciprocal obligation to arbitrate satisfies the mutuality obligation." *Brubaker v. Barrett*, 801 F.Supp.2d 743, 754 (E.D. Tenn. 2011), citing *Howell v. Rivergate Toyota, Inc.,* 144 Fed. Appx. 475, 480 (6th Cir. 2005); *see also Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 668 (6th Cir. 2003) (en banc) (holding "a contract is illusory only when by its terms the promisor retains an unlimited right to determine the nature or extent of his performance.") Therefore, Plaintiff's validity attack based on a purported lack of mutuality of obligation is without merit and unsupported by the record. Plaintiff has failed to demonstrate a genuine issue of material fact as to the validity of the parties' agreement to arbitrate.

(D.E. No. 18 at Pg 32).

Moreover, "Texas courts have consistently held that arbitration agreements presented on the day of or after hire, and containing binding reciprocal promises to arbitrate, are not illusory." (D.E. No. 21 at Pg ID 540). *See IFMG Secs., Inc. v. Sewell,* 2011 WL 5515528 (Tex. App. 2011) ("The Texas Supreme Court has held that such reciprocal obligations to arbitrate are sufficient consideration to support a valid contract.") (Citing *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 228 ( Tex. 2003)); *see also In re 24R, Inc*., 324 S.W.3d 564 (Tex. 2010) ("Mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement."); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 248-49 (Tex. App. 2006); *In re Kellogg Brown & Root*, 80 S.W.3d 611 (Tex. App. 2002); *In re Alamo Lumber Co.*,

23 S.W.3d 577 (Tex. App. 2000).

Accordingly, the Court concludes there is a valid agreement to arbitrate and this employment dispute is within its very broad scope.

## II.     Plaintiff Knowingly And Voluntarily Waived His Right To A Jury Trial.

As Defendant acknowledges, "[e]ven if the arbitration agreement is valid, its enforceability may turn on whether the plaintiff knowingly waived his right to litigate claims in court. *Cunningham v. Henry Ford Health System*, No. 2:17-cv-11015, 2017 WL 5564599, at *2 (E.D. Mich. Nov. 20, 2017)." (Def.'s Supp. Br., D.E. at 18 at Pg ID 324). That is, even if a court finds that a valid agreement to arbitrate exists under state law, the plaintiff still cannot be compelled to arbitrate the claims if the plaintiff can show, under federal law, that he or she did not knowingly and voluntarily waive their Constitutional right to a jury trial. *See, e.g., Hergenreder*, 656 F.3d at 420-21; *Walker,* 400 F.3d at 381-83.

The question of right to jury trial is governed by federal and not state law. *Hergenreder, supra*. The court looks to the "*Morrison* factors" of: 1) the plaintiff's experience, background, and education; 2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; 3) the clarity of the waiver; 4) consideration for the waiver; as well as 5) the totality of the circumstances. *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 668 (6th Cir. 2003).

Defendant contends that, applying these factors, Plaintiff has failed to make a sufficient evidentiary showing to create an issue of material fact as to whether Plaintiff executed a knowingly and voluntary waiver. The Court agrees.

First, Plaintiff's experience, background, and education were sufficient to understand the

12

waiver at issue here, which was stated in understandable terms. At the time that he applied for employment, Plaintiff was a high school graduate. In addition, although he had not yet received a college degree, Plaintiff had taken five years of college courses at Eastern Michigan University. Plaintiff also identified that he had the following special skills and qualifications: "P&L, Microsoft office, Team Building, Lean, 6Sigma, Logistics Management." (D.E. No. 17-3 at Pg ID 269). Thus, Plaintiff was computer literate and had experience with specialized programs and applications. Plaintiff also had significant work experience, in both the private sector, and in the military. In the private sector, Plaintiff had previously worked as the Shipping Manager for a hub facility, earning a salary of $53,000.00 per year. And Plaintiff had also served a "Section Chief" with the Michigan Army National Guard, where he directed firing battery training and operations. Nothing about Plaintiff's experience, education, or background suggests that he was incapable of understanding the language in the relevant documents.

Second, the admissible evidence presented to this Court appears to indicate that Plaintiff had sufficient time to consider the waiver. Mr. Addis's Declaration indicates that new employees are placed in a break room to review their onboarding documents and that Plaintiff did not ask Mr. Addis for additional time to review any of the documents provided.

Third, the waiver of the right to a jury trial in Defendant's Dispute Resolution Program policy is clear:

> The Dispute Resolution Program is separate and distinct from the policies contained in the Playbook and the SOLE AND EXCLUSIVE means by which both you and Interstate may resolve disputes arising from your prospective or actual employment with the Company. The Dispute Resolution Program applies to any and all employment related disputes, except for instances where Interstate is forced to seek court ordered injunctive relief to prevent actions of an employee that are in violation of contract or otherwise imminently harmful to Interstate. **Applying for or continuing employment with Interstate constitutes your**

13

> **acceptance of the Dispute Resolution Program as the only method you will use to resolve a conflict with the Company.**
> . . . .
> Arbitration is a process in which a dispute is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator makes this decision after both sides present their arguments at the arbitration hearing. There is no jury.

(D.E. No. 17-8 at Pg ID 289 & 292) (capitalization and bolding in original).

Fourth, there was sufficient consideration for the waiver under federal law, as the "Sixth Circuit has recognized that "continued employment is sufficient consideration for a waiver." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 462 (6th Cir. 2013) (citing *Hergenreder v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 421 (6th Cir. 2011)).

In the totality of the circumstances, based on the evidence presented to the Court, Plaintiff is an educated and experienced managerial-level employee who received the relevant documents, that were written in clear, understandable terms, Plaintiff acknowledged receipt of those documents, and thus knowingly and voluntarily waived his right to a jury trial. As such, the arbitration agreement is enforceable.

## CONCLUSION & ORDER

For the reasons set forth below, **IT IS ORDERED** that Defendant's Motion to Compel Arbitration is **GRANTED** and the parties are **COMPELLED** to arbitrate the claims asserted in this action.

**IT IS FURTHER ORDERED** that this action is **STAYED** until the conclusion of any arbitration proceedings and this action is **CLOSED** on the Court's docket for statistical purposes.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction in accordance with

14

the Federal Arbitration Act, 9 U.S.C. §§ 1-16, for the purpose of confirming, vacating or correcting any arbitration award. Any party may move to do so at the conclusion of the arbitration proceedings.

**IT IS SO ORDERED**.

                                                       s/Sean F. Cox
                                                       Sean F. Cox
                                                       United States District Judge

Dated: March 14, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 14, 2018, by electronic and/or ordinary mail.

                                                         s/Jennifer McCoy
                                                       Case Manager